Good morning, Your Honor. May I please the Court, Sun Park, for Petitioner Kairoseri Cruz Rendon? Your Honor, I believe the first issue is whether the petitioner was given a full and fair hearing. I believe she was only given one month to try to satisfy the four prongs of her cancellation removal application. Well, you know, I saw that, but that was kind of her counsel's doing. She was first offered three months, and he couldn't make that one, then two months, and he couldn't make that one, and then it was one month, so that's what she ordered. Your Honor, we were just trying to find a date, Your Honor. Yeah. It seemed that the immigration judge was trying to penalize the respondent through the attorney while going backwards in time. Even three months is a very, very short time for a respondent to get prepared. First of all, one of the prongs is good moral character. Good moral character. Speak up just a little. Speak up, Your Honor. I'm sorry. Good moral character is one of the prongs. To establish good moral character, criminal backgrounds need to be completed. And in this case, the criminal backgrounds were not even completed. The filing was given on the date of the hearing date. If you see the transcript, the trial attorney was not also prepared. We had 266 pages, psychological report, also indicating that the child had potentially ADHD and may require special education. Counsel, excuse me. What kind of record was made, because I'm going to follow up on Judge Thompson's question. What kind of record was made at the time that the hearing date was set as to whether counsel would be prepared? In other words, the I.J. proposed a date three months out. Yes, Your Honor. Counsel is unavailable, and then he ended up with a date one month out. At the time that the date was set, was there any record made as to say, Judge, we're just not going to be ready by then, we'll accept the date, but the time is going to be inadequate. I'm just wondering whether that issue was preserved in any way. No, Your Honor. We didn't even know that the child had any medical problems at the time. When the evaluation went through, that's when we discovered that the child had potential ADHD. So the date was accepted, and then after the date was accepted, investigation turned up these issues that required additional time. Yes, Your Honor. And we believe that the judge would have been reasonable to grant a continence, especially in light that the criminal background checks were not completed,  In fact, today we know he is diagnosed with ADHD, and he is on individualized education program. He's actually prescribed methadone. This is Ritalin, something he's prescribed medication, which he has to take daily. He's seen a teacher, a therapist once a week, and a doctor once a month to assess that diagnosis. We would have provided that evidence, but the school system was providing an evaluation. They have their own evaluation to even consider whether he should be given individualized education program. And it seems from the beginning that the immigration judge acted more as an advocate than a third-party trial of fact, an impartial third-party trial of fact, Your Honor. The trial attorney who came in, she came in half an hour late. We were still in the proceedings. She was not prepared to go forward. The judge basically limited any kind of argument. They didn't have any kind of presentation. Basically said the psychology report were very detailed and also interjected with facts that were not in evidence, stating that she's read up on Mexico, saying that they do have special education, but then they're also working on it. Your Honor, there was no evidence that was submitted by the trial attorney at the time regarding that fact. It was only the opinion of the judge. If the judge was going to give that kind of opinion. Yes, Your Honor. If the judge was going to give that kind of opinion, she should have given weight in terms of her experience in Mexico as well. It seems that the evidence was just replete with testimony from the statements from the judge, saying that there is no hardship. The child is only 4 years old. Especially in light of the fact that there was a psychological evaluation and that there was a clear indication that this child needed help. In my 12 years' experience, we have not lost a case with a child receiving individualized education assistance, especially with ADHD. That is beyond the norm. That should have sent a red flag to the judge and said this case is not a normal case, so to speak. This case needs to be continued. We need to ascertain the facts. She's saying there's employment opportunities in Mexico. There is educational opportunities that are similar in Mexico. However, in order to establish employment opportunities, the Respondent has to send out job applications to Mexico to see if she can even get a job there. That takes around 3 to 6 months to apply for jobs, get jobs back, see what kind of employment opportunities there are, and also to investigate any kind of hospital help, how much it would cost to even see a specialist in Mexico. One month after discovering this on the first instance, after one month from the master hearing, the day after we pled, and having it set for a trial date, and having submitted the application for relief, I believe it was unconscionable for the judge to go forward. And that, just her going forward, it seemed that she had her own agenda and was already predisposed in denying this case, and I believe that she was just looking at the age of the trial. When you say trial attorney, are you talking about the government attorney or the private attorney, Your Honor? I was. Yes. And, Your Honor, she basically borrowed money left and right from family members just to... This child, this little boy was born in this country. Yes, Your Honor. Your Honor, I forget, in the beginning I wanted to reserve 2 minutes for rebuttal. You've got 3. Yes. So I have 1 minute left. And as we're saying, in terms of the full... Thank you, Your Honor. But, again, in terms of the proceedings, one of the important things is that the criminal background needed to be checked. And it was more of an indication that she was not following procedure. If she was going to ever deny this case, it would have been just on good moral character saying that you haven't established it because the criminal background has not even come back in yet. And here, I think it's well known that the criminal background checks could take between 6 months to a year in some cases. There are some cases that are ready to go forward, but the judges do not go forward or complete them because the government did not complete the criminal background check. Just that in itself should have given her more time to at least prepare her case. That is all for now. Thank you. Good morning, Your Honor. May it please the Court, and I respond on behalf of the government. In this case, Petitioner failed to demonstrate that the IJ denied her full and fair hearing on her cancellation application. From the onset, I'd just like to concentrate on establishing that it was the Petitioner's burden to establish the requisite hardship for her cancellation application. And that that decision is then discretionary in terms of when the IJ decides whether or not they've met that standard. Well, I mean, what was going to happen to this 4-year-old boy, Jose, if they kicked the mother out? She said that he would go with him, and that was actually in the psychological evaluation. It was recommended that the boy stay with his mother. Yeah, so we're going to send him back with his mother. And so what are his opportunities in Mexico? That evidence wasn't presented to the IJ. Well, I'm asking you. We know what the opportunities are there. But that is not whether the IJ gave the Petitioner a full and fair hearing. Wasn't the IJ, when she moved into a subject, say to her, well, you know, let's already move on. Let's do something. Go into another area. It sounded like she was very abrupt, the IJ. She might have been abrupt. I think what she was asking was for additional information outside of the psychological evaluation to discern whether there was going to be hardship for this Petitioner. I think she didn't want repetition of the psychological. How about the child? Right, based on the child, the hardship to the child, and whether the Petitioner would qualify for cancellation. So you've got a four-year-old boy who's an American citizen, and he's suffering from attention deficit disorder. And we think that he's going to be doing just as well in Mexico as he could be doing here, going to get the same care. I'm not qualified to answer that question. However, Petitioner had been in this country illegally four years before she even had given birth to her son. I mean, that is not a reason for her to stay in this country simply because she gave birth to a U.S. citizen child. She needs to meet the standard for the cancellation of removal. And here, the IJ, if I can go through the record, gave her an absolutely clearly full and fair hearing. Well, counsel, one of the things that bothered me the most about this record is that  the IJ, from what I can read, testified as to what conditions in Mexico are or are not. I mean, it's not a... I would like to disagree with you. Please, no, I want you to. Tell me why that's wrong. But I know that Petitioner's counsel indicated that the IJ speculated on conditions in Mexico. But actually, in the record, the IJ stated that Petitioner failed to meet her burden and said, unless you give me some evidence, she's not met her burden. This is on the record on 107 and 109. She made a side comment indicating, I've seen cases where evidence has been presented of conditions in Mexico, and then reiterated that that burden hadn't been met. And even suggested for Petitioner's counsel to perhaps issue or to file a motion to reopen presenting this evidence. So, you know, she was trying to indicate, you might have it, but right now, this is not a reason for me. Well, it's true. What you're saying is accurate, that at various points in the record, the IJ said you haven't met your burden. But she also said, I have heard about or I know about or I've read about, you know, all these wonderful special ed programs that they have in Mexico. That's in the record. And it seems to me that that, in evaluating whether the Petitioner met her burden or not, the IJ is considering what the Petitioner has to say in the light of her own opinions and beliefs as to what conditions in Mexico are. And that is troubling. It seems to me that's not very judicial. And is your response simply that it's harmless because the evidence isn't there? Exactly. I don't think that was. I mean, she for two pages goes over the psychological evaluation. She indicates that, you know, she went through it. She understood. When they started to repeat evidence during testimony that was in the psychological evaluation, she kept saying, no, I know I've seen that before. Let's move on from that. I understand from the evaluation. Not only that, Petitioner at no time presented this additional evidence during any time during the administrative proceedings to the board. Did she have any burden to do that? Isn't the board's review limited to the record before the IJ? The board could have perhaps seen the additional evidence and remanded to the IJ to consider this again. They wouldn't have done, of course, a denominal review of the fact-finding. Yes, they wouldn't have done that, of course. But they could have seen, or like the IJ suggested, could have filed a motion to reopen with the new evidence. So there were some, I believe, outlets for Petitioner's counsel to present the evidence. What were her skills, the Petitioner's skills? She testified that she did iron clothes pressing. She pressed clothes. She does what? Press clothes. Press clothes. Yeah. Another question? Yeah, I thought we were getting a kinder, gentler government, you know. I'm kinder. I'm kinder. This happened a while ago, this hearing. Trust me, I know my other colleagues. I'm time-learned. Oh, yeah, I know that. But, you know, we do have a child here who's born in this country who could be president someday. Maybe we need a time when we need a really hyperactive president. Anyway. Thank you, counsel. Yeah. What were you doing all the time? Pardon me, Your Honor? What were you doing all the time? We were seeking new evidence at the time, Your Honor. But the fact that the judge said that there's special education in Mexico, it seemed that she already acknowledged the fact that the child didn't need help. The child didn't what? The fact that the judge, the immigration judge, stated that there's special education in Mexico seemed to have acknowledged the fact that the child didn't need help, didn't need special education when she made that comment, Your Honor. Oh, I see. And also, when you asked what her profession is or her job, she's basically a dress presser at the textile mill. She earns $350 a week. And what's impressive is she did not receive welfare from the state. She worked diligently to provide for her own child. And what differentiates this case from the other seminal cases of Monreal, Andezola, and Resinas is the fact that there is a medical condition regarding this child. And what's very similar to Resinas where there was a single mother providing the welfare for her six children. Here she's providing solely for her one child with a medical condition. She's not making the $10,000 gross that the woman did in Resinas. She's actually making less than $1,700, $1,800 a month. And she's still providing for the child. With this, given the fact that she has to get deported, she is deported to Mexico with a child who has a medical condition, I believe it's impossible for that child to even make it to survive in Mexico, Your Honor, given her condition. This is a case where it would rise to the level of unconscionable if her case was denied.  Thank you, counsel. I will call the next matter.
judges: Pregerson, Thompson, Fogel